COMMONWEALTH vs. GREGORY T. DUFFY.

Hampden.     October 13, 1976. — November 26, 1976.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Narcotic Drugs,* Possession, Sufficiency of evidence.

At the trial of a defendant charged with possession of a controlled
    substance with intent to distribute it, evidence showing merely that
    the defendant was the lessee of a trailer in which the drugs were
    found, that he was seen at the trailer on one occasion six days prior
    to the discovery of the drugs, and that personal items belonging to
    him were still in the trailer several days after the discovery was
    insufficient to warrant a finding that he had dominion over and con-
    trol of the drugs where there was also evidence that the defendant
    had surrendered control of the trailer to his brother prior to the
    seizure of the drugs, that he was an absentee lessee of the trailer,
    and that he knew nothing of the drugs found therein. [660-661]

INDICTMENT found and returned in the Superior Court
on January 17, 1974.

The case was tried before *Smith,* J.

*Martin G. Weinberg* for the defendant.

*L. Jeffrey Meehan,* Special Assistant District Attorney,
for the Commonwealth.


HALE, C.J.   The defendant was convicted of possession
of a Class D controlled substance (marihuana) with the
intent to distribute in violation of G. L. c. 94C, § 32, and
he appeals from his conviction pursuant to G. L. c. 278,
§§ 33A-33G. He assigns as error the denial of his motion
for a directed verdict.[1]

The defendant argues that there was insufficient evi-
dence to warrant the finding that he was in possession of

---

[1] The defendant, his brother, and one McCarthy were tried together.
McCarthy was acquitted at the direction of the judge. The defendant's
brother was convicted but has not appealed.

the marihuana in a trailer on Abbott Hill Road, Chester, on November 10, 1973. As we are reviewing the denial of a motion for a directed verdict, we view the evidence in its aspect most favorable to the Commonwealth. *Commonwealth* v. *Flynn*, 362 Mass. 455, 479 (1972). *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 786 (1975). The sole question raised by the motion is whether "on this evidence and reasonable inferences therefrom the jury could find, beyond a reasonable doubt," that the defendant was in possession of a controlled substance. *Commonwealth* v. *Shea*, 324 Mass. 710, 713 (1949). *Commonwealth* v. *Baron*, 356 Mass. 362, 365 (1969). *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 612 (1973).

We summarize the evidence presented by the prosecution. A week or two after Easter in 1973 the defendant contacted one Frangimore, the owner of a thirty-eight foot trailer located on Abbott Hill Road, an unpaved road in Chester. Access to the trailer was over an unpaved driveway about 100 yards in length. Frangimore rented the trailer to others but did not use it himself. The trailer was equipped with a box spring and double mattress in the bedroom, with a stove, a sink, a table, chairs, a refrigerator, and cabinet space in the kitchen area, with a couch (that was convertible into a double bed) and a closet in the living room area, and with a furnace. The trailer plumbing was not connected, but there was an outhouse, and a nearby brook was the source of fresh water. At that time the defendant paid two hundred and fifty dollars in cash to Frangimore for rent for the period from Memorial Day to Labor Day. On June 18, 1973, a telephone was installed in the trailer under the name of Allen Johnson. The number assigned to that telephone was 354-9630.

On October 20 the defendant rented a 1974 Ford Grand Torino automobile bearing Massachusetts registration number Y61-799, from Marcotte Ford of Holyoke. The rental agreement listed the defendant's address as 101 Motyna Street, Ludlow, Massachusetts, and a home phone number of 354-9630. The car had been rented for a period of only five days, but the defendant had contacted Mar-

cotte Ford by October 24, and the period had been extended to November 7. On October 24 the telephone company sent a reminder notice to the Abbott Hill Road address which indicated that the bill for 354-9630 was overdue. The telephone service was suspended for nonpayment on October 29, and the telephone records indicated that the last day the telephone had been used was October 28, 1973.

Some time near the end of October Frangimore went to the trailer to discuss its further rental with the defendant.[2] Upon entering the driveway leading to the trailer Frangimore noticed a section of chrome stripping on the ground near a partially exposed culvert. Frangimore saw the defendant putting something like a box or a suitcase into his car. At that time the defendant acknowledged that the chrome strip had been scraped off the rented car. The defendant then paid Frangimore one hundred dollars in cash for the rental of the trailer through Memorial Day, 1974. The defendant told Frangimore that he was renting the trailer in order to reserve it for the summer of 1974, that he would not be using it himself, but that his brother, John Duffy, would take care of it during the winter and would use it primarily for skimobiling and hunting.

On November 1, 1973, an unidentified person made a change of billing request that the bill for telephone number 354-9630 be sent to Allen Johnson in care of Ann Duffy in West Springfield. Some time early in November Frangimore went to the trailer at the request of the defendant for the purpose of getting the furnace in working order.[3] The defendant was with Frangimore on that occasion. According to Frangimore, the place was being lived in only on weekends, and he had noticed nothing unusual inside the trailer on any of the occasions he had been inside.

On November 4, 1973, one Shea, a State police officer, was in the vicinity of Abbott Hill Road investigating a

---

[2] Frangimore's testimony as to particular dates was uncertain at best.

[3] Frangimore testified that he visited the trailer only on weekends. It would appear that this event occurred not later than November 4.

house break about a quarter of a mile from the trailer. Upon leaving the scene of the house break Shea observed four vehicles parked on the side of the road at the foot of the driveway leading to the trailer. Shea jotted down the registration numbers and left. One of the cars observed by Shea was registered to a "Duffy," but Shea was not sure whether the car was in John's or Gregory's name. On November 6, 1973, a telephone bill was sent to Allen Johnson at the Abbott Hill Road address.

On November 9, 1973, John Duffy appeared at the telephone company office to request telephone service at Abbott Hill Road. On that date someone returned the rental car to Marcotte Ford. Also on November 9 Shea again went to the trailer in connection with his investigation of the house break. John Duffy was the only one present at the trailer on that occasion. In a conversation which took place outside the trailer John Duffy stated that he lived in the trailer with a friend named Francis McCarthy. There was no mention of the defendant, and Shea did not see him there.

On November 10, 1973, Shea located Francis McCarthy at his address in West Springfield. Some time during the conversation with McCarthy, John Duffy arrived on a bicycle. McCarthy stated that he lived in West Springfield, although on occasion he had lived at the trailer with John Duffy. Both John Duffy and McCarthy denied being at the trailer on November 4, 1973.

Later in the day on November 10, Shea obtained a warrant to search the trailer. Shortly after dusk, accompanied by two other police officers, Shea entered the trailer by prying open the door. Inside they found and seized three hundred and forty pounds of marihuana, largely in brick form, a small smoking pipe, a weighing scale, and a small circular object containing marihuana seeds.

Some time prior to November 10 (just when is not clear), Shea had noticed a chrome strip near a culvert at the entrance of the driveway. On either November 9 or 10, prior to the search, Shea noticed outside the trailer the remains of animals with the fur removed.

Commonwealth v. Duffy.

At some undetermined time following November 10, apparently between the fifteenth and the twenty-first, Frangimore saw John Duffy and his mother and father near the trailer. They stated they were at the trailer to "take the stuff that belonged to Gregory out of there."

On November 17, 1973, Shea went to Marcotte Ford to check the vehicle bearing license number Y61-799. There he noticed that a chrome strip was missing from the right side of that vehicle and a flat tire in its trunk. Thereupon Shea returned to the trailer and retrieved the chrome strip. At that time he noticed that the end of the culvert was buckled, and he got the impression that there was rubber on the end of the culvert. Upon returning to Marcotte Ford he observed that the chrome strip fitted the car and that the flat tire had a tear in its sidewall.

The Commonwealth agrees that there is no direct evidence of the defendant's actual possession of the marihuana in the trailer on November 10, 1973, the day of the search, but argues that there was sufficient circumstantial evidence to prove that the marihuana was constructively possessed by the defendant. It is well established that "[p]roof of criminal conduct may be established by circumstantial evidence and inferences drawn therefrom." *Commonwealth* v. *Xiarhos*, 2 Mass. App. Ct. 225, 231 (1974). Contrast *United States* v. *Holland*, 445 F. 2d 701, 703 (D.C. Cir. 1971). However, circumstantial evidence must be such as to warrant a finding of guilt. "The jury are permitted to draw rational inferences from the evidence, but no essential element of the crime may rest in surmise, conjecture, or guesswork." *Commonwealth* v. *Kelley*, 359 Mass. 77, 88 (1971).

To warrant a finding of constructive possession it must be shown that the defendant exercised dominion or control over the marihuana. *Commonwealth* v. *Guerro*, 357 Mass. 741, 752 (1970). *Commonwealth* v. *Lee*, 2 Mass. App. Ct. 700, 704 (1974). *Commonweath* v. *Nichols*, ante, 606, 613 (1976). The control exercised by the defendant over the area where the marihuana was found need not have been exclusive. *Commonwealth* v. *Mott*, 2 Mass. App. Ct. 47,

53-54 (1974). *Commonwealth* v. *Guerro, supra.* Contrast *Commonwealth* v. *Frongillo,* 359 Mass. 132, 138 (1971), with *Commonwealth* v. *Flaherty,* 358 Mass. 817, 818 (1971).

We conclude that the evidence of the defendant's dominion over and control of the marihuana was insufficient to warrant a finding of guilt and that it was error to submit the case to the jury. There was no evidence of the defendant's being at or near the trailer after November 4, 1973. His status as the lessee of a trailer occupied by another, without more, did not provide a sufficient nexus with the marihuana seized in the trailer to permit an inference of constructive possession. *State* v. *Haynes,* 25 Ohio St. 2d 264, 270 (1971). *Franklin* v. *Commonwealth,* 490 S. W. 2d 148, 149-150 (Ky. 1973), cert. den. 414 U. S. 858 (1973). See also *Evans* v. *United States,* 257 F. 2d 121, 128 (9th Cir.), cert. den. 358 U. S. 866 (1958). *Arellanes* v. *United States,* 302 F. 2d 603, 606 (9th Cir. 1962). *United States* v. *Holland,* 445 F. 2d at 703. Contrast *United States* v. *Davis,* 461 F. 2d 1026, 1036 (3d Cir. 1972). There was no evidence tending to tie the defendant to the trailer on the day of the search, as was the case in *Commonwealth* v. *Mott, supra.* The broken chrome strip and the damaged tire in the trunk of the rental vehicle are of no help in indicating the defendant's presence at the trailer on any particular day. Nor was there surveillance of the defendant entering and leaving the premises several times in a specific period immediately before the search, as in *Commonwealth* v. *Lee, supra.* The most the evidence showed was that the defendant was seen at the trailer on a single occasion between the end of October and a date six days prior to the discovery of the marihuana. The evidence that personal items of the defendant were still to be found in the trailer several days following the discovery is inconclusive at best. *Commonwealth* v. *Pursley,* 2 Mass. App. Ct. 910 (1975). Contrast *Commonwealth* v. *Xiarhos, supra,* at 231-232; *Commonwealth* v. *Gill,* 2 Mass. App. Ct. 653, 656-658 (1974). All of the evidence which tends to establish the defendant's con-

trol also tends with equal force to establish that the defendant had surrendered control of the trailer to his brother prior to the seizure of the marihuana, that he was an absentee lessee of the trailer, and that he knew nothing of the marihuana found therein. *Commonwealth* v. *Shea,* 324 Mass. at 713-714. *Commonwealth* v. *Flaherty, supra.*

The defendant's motion for a directed verdict should have been granted. The judgment is reversed, the verdict is set aside, and judgment is to be entered for the defendant.

*So ordered.*